COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-372-CR
 
PAUL KIRK MCCRAW                                                        
   APPELLANT
V.
THE STATE OF TEXAS                                                               
STATE
------------
FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY
------------
OPINION
------------
Introduction
Paul Kirk McCraw appeals from his
conviction for unlawfully carrying a firearm. In four points, he contends that
the evidence is legally and factually insufficient to support the verdict, the
prosecutor engaged in improper jury argument, and the trial court erred in
overruling his motion to suppress. We will reverse and render a judgment of
acquittal.
Background Facts
Deputy Wilson was en route to a domestic
disturbance call when the driver of a gold minivan signaled him to stop. Because
Deputy Wilson knew that the suspect had left the residence driving a gold
minivan, he stopped and made contact with the driver. Deputy Wilson asked the
driver if he had any weapons, and the driver stated that he did not. Standing
outside of the vehicle, Deputy Wilson performed a quick plain view search of the
vehicle, but failed to locate a weapon. After identifying the driver as
appellant, Deputy Wilson directed him to return to the residence for further
investigation. With Deputy Wilson following closely behind, appellant drove his
vehicle back to the residence.
On the way to the residence, dispatch
advised Deputy Wilson that the victim had not been injured in the disturbance
and that appellant might have a firearm in his van. Deputy Wilson then initiated
a traffic stop. As appellant pulled into the circle drive and parked, Deputy
Wilson parked his vehicle directly behind appellant's van. Sergeant Rauch,
another officer responding to the call, pulled into the drive from the opposite
direction and parked his cruiser immediately in front of appellant's vehicle,
pinning appellant's van between the two police cars. Sergeant Rauch then pulled
his weapon and ordered appellant to exit the vehicle and step to the rear of the
van with Deputy Wilson. While Deputy Wilson frisked appellant for weapons,
Sergeant Rauch searched appellant's van for a weapon. With the assistance of
appellant's wife, Sergeant Rauch located the gun, and appellant was arrested and
charged with unlawfully carrying a firearm.
Before trial, appellant filed a motion to
suppress the weapon alleging that he had been unlawfully arrested and detained
in violation of his state and federal constitutional rights. Appellant also
filed a motion to quash and/or dismiss the information, raising his Second
Amendment right to keep and bear arms as a defense to prosecution. After hearing
evidence regarding appellant's motions, however, the trial court denied both
motions. A jury found appellant guilty as charged, and the trial judge sentenced
him to 180 days in jail, probated for fifteen months and a $500 fine. Appellant
then filed two motions for new trial, both of which were overruled by operation
of law.
Investigative Detention or
Arrest?
In his fourth point, appellant complains
that the trial court erred in overruling his motion to suppress. In reviewing a
trial court's ruling on a motion to suppress, we give almost total deference to
a trial court's determination of historical facts and review de novo the court's
application of the law of search and seizure. State v. Ross, 32 S.W.3d
853, 856 (Tex. Crim. App. 2000) (citing Guzman v. State, 955 S.W.2d 85,
88-89 (Tex. Crim. App. 1997)); Bachick v. State, 30 S.W.3d 549, 551
(Tex. App.--Fort Worth 2000, pet. ref'd). In this case, the trial court did not
make explicit findings of historical fact, so we review the evidence in a light
most favorable to the trial court's ruling. O'Hara v. State, 27 S.W.3d
548, 550 (Tex. Crim. App. 2000).
Appellant claims that because he was
unlawfully arrested before the deputies searched his vehicle, the weapon seized
as a result of that search must be suppressed. The State asserts, however, that
the encounter was merely an investigative detention based on a reasonable
suspicion that appellant was involved in an assault and might have a weapon
inside his vehicle. Thus, we must determine whether appellant's encounter with
the deputies constitutes an arrest or an investigative detention.
We recognize that not every encounter
between a civilian and a police officer is of constitutional dimension. A police
officer may approach a person without probable cause or reasonable suspicion to
ask questions or even to request a search. Florida v. Royer, 460 U.S.
491, 497-98, 103 S. Ct. 1319, 1324 (1983); Johnson v. State, 912 S.W.2d
227, 235 (Tex. Crim. App. 1995). So long as the person remains free to disregard
the officer's questions and go about his business, the encounter is consensual
and merits no further constitutional analysis. See Johnson, 912 S.W.2d
at 235. The constitution is invoked only when the encounter rises to the level
of a seizure. Under both the federal and state constitutions, a person is seized
when he yields to an officer's show of authority under circumstances in which a
reasonable person would believe he is not free to leave. See id. at
236.
The seizure of a person by a police
officer may take two forms: an arrest or a temporary detention for purposes of
investigation. There is no bright-line test to distinguish one from the other. Josey
v. State, 981 S.W.2d 831, 839 (Tex. App.--Houston [14th Dist.]
1998, pet. ref'd); see also Rhodes v. State, 945 S.W.2d 115, 118 (Tex.
Crim. App.) (stating that handcuffing is not always equivalent to arrest), cert.
denied, 522 U.S. 894 (1997). Whether a particular seizure is an arrest or
merely a temporary detention is a matter of degree and turns on such factors as
the length of the detention, the amount of force employed, and whether the
officer actually conducts an investigation. See Woods v. State, 970
S.W.2d 770, 775 (Tex. App.--Austin 1998, pet. ref'd).
A person is arrested when his liberty of
movement is restricted or restrained by an officer or person executing a warrant
of arrest or without a warrant. Tex. Code Crim. Proc. Ann. art. 15.22 (Vernon
1977); Medford v. State, 13 S.W.3d 769, 772-73 (Tex. Crim. App. 2000); Amores
v. State, 816 S.W.2d 407, 411 (Tex. Crim. App. 1991). Although the term
implies an element of detention, custody, or control of the accused, it is not
the actual, physical taking into custody that will constitute an arrest. Medford,
13 S.W.3d at 772 (citing Smith v. State, 153 Tex. Crim. 230, 219 S.W.2d
454, 456 (1949)); Hardinge v. State, 500 S.W.2d 870, 873 (Tex. Crim.
App. 1973). A suspect's submission to an officer's show of authority will also
constitute an arrest. California v. Hodari D., 499 U.S. 621, 628, 111
S. Ct. 1547, 1551 (1991); Medford, 13 S.W.3d at 773.
An investigative detention, on the other
hand, occurs when an officer lacks probable cause to arrest but nonetheless
possesses a reasonable suspicion; that is, the officer is able to point to
specific, articulable facts that, taken together with rational inferences from
those facts, reasonably warrant the detention. Davis v. State, 947
S.W.2d 240, 244 (Tex. Crim. App. 1997). These facts must amount to more than a
mere hunch or suspicion. Id. (citing Williams v. State, 621
S.W.2d 609, 612 (Tex. Crim. App. [Panel Op.] 1981)). The articulable facts used
by the officer must create some reasonable suspicion that some activity out of
the ordinary is occurring or has occurred, some suggestion to connect the
detainee with the unusual activity, and some indication the unusual activity is
related to crime. Davis, 947 S.W.2d at 244 (citing Meeks v. State,
653 S.W.2d 6, 12 (Tex. Crim. App. 1983)). The mere opinion of the officer who
detains the suspect, however, does not conclusively determine the nature of the
detention. See Rhodes v. State, 913 S.W.2d 242, 247 (Tex. App.--Fort
Worth 1995) (holding defendant was only temporarily detained even though officer
testified he was under arrest), aff'd, 945 S.W.2d 115 (Tex. Crim.
App.), cert. denied, 522 U.S. 894 (1997); see also Amores, 816
S.W.2d at 411 (holding defendant had been arrested even though officer testified
he was only temporarily detained).
When officers possess reasonable suspicion
justifying a temporary investigative detention, they may use such force as is
reasonably necessary to effect the goal of the stop: investigation, maintenance
of the status quo, or officer safety. Rhodes, 945 S.W.2d at 117.
Reasonableness must be judged from the perspective of a reasonable officer at
the scene, rather than with the advantage of hindsight. Id. at 118.
Allowances must be made for the fact that officers must often make quick
decisions under tense, uncertain, and rapidly changing circumstances. Id.
However, if the force utilized exceeds that reasonably necessary to effect the
goal of the stop, such force may transform an investigative stop into a full
blown arrest. See State v. Moore, 25 S.W.3d 383, 385-86 (Tex.
App.--Austin 2000, no pet.) (holding although officer possessed reasonable,
articulable facts justifying an investigative stop, handcuffing of suspect
constituted excessive force under the circumstances and transformed detention
into an arrest, for which the officer did not have probable cause); Gordon
v. State, 4 S.W.3d 32, 37 (Tex. App.--El Paso 1999, no pet.) (holding that
in the absence of any proof in the record to demonstrate the necessity for the
officer's actions, what may have been a valid investigative detention at the
outset became an arrest unsupported by probable cause).
In this case, Deputy Wilson was on his way
to a domestic disturbance call when appellant signaled him to stop. Although
Deputy Wilson testified that he would have stopped appellant anyway because
appellant's vehicle met the description of the suspect's vehicle and was in such
close proximity to the residence, the fact remains that appellant signaled the
deputy to stop. At this point in time, appellant concedes and we agree that the
interaction amounted to nothing more than an encounter. See State v. Perez,
85 S.W.3d 817, 819 (Tex. Crim. App. 2002); Johnson, 912 S.W.2d at 235.
After Deputy Wilson identified appellant
as the suspect, he questioned him about the disturbance and asked him if he had
any weapons. When no weapons were discovered, Deputy Wilson requested that
appellant accompany him back to the residence for further investigation.
Appellant contends that at this point the encounter escalated into an arrest
because "[a]ppellant's liberty of movement was restricted." Appellant,
however, willingly drove his own vehicle back to the residence. A person who
voluntarily accompanies investigating police officers to a certain location,
knowing that he is a suspect, has not been seized for Fourth Amendment purposes.
Anderson v. State, 932 S.W.2d 502, 505 (Tex. Crim. App. 1996), cert.
denied, 521 U.S. 1122 (1997); see also Dancy v. State,
728 S.W.2d 772, 778-79 (Tex. Crim. App.), cert. denied, 484 U.S. 975
(1987). Therefore, Deputy Wilson's request that appellant accompany him back to
the residence did not constitute an arrest.
Deputy Wilson then followed appellant back
to the residence. On the way, dispatch notified him that the victim had not been
injured and that the suspect might have a weapon. Deputy Wilson then immediately
turned on his overhead lights and initiated a traffic stop. Because they were so
close to the residence, appellant drove a short distance and pulled into the
circle drive at the residence. When he did so, Deputy Wilson and Sergeant Rauch
blocked his van in the driveway, ordered him out of the vehicle at gunpoint, and
directed him to step to the rear of the vehicle.
The State characterizes this contact as an
investigative detention. The State also contends that the force used was
reasonable because the deputies had a reasonable suspicion that appellant was
carrying a weapon inside his vehicle. We disagree.
The record reveals that Deputy Wilson did
not ask appellant any questions during the search of his vehicle. The deputies
did not even question appellant's wife until after they had located the weapon.
Therefore, this contact could not be characterized as an investigative
detention. Burkes v. State, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991)
(holding that if the officer conducted no investigation by questioning, the
detention cannot be considered investigatory).
Further, at the time dispatch notified
Deputy Wilson that appellant might have a weapon, he had already determined that
appellant did not have any weapons. During the initial encounter, he questioned
appellant regarding the possession of weapons. He also peered through the window
of the vehicle to see if there were any weapons in plain view. Satisfied that
there were no weapons in the vehicle, he allowed appellant to drive the vehicle
back to the residence. Deputy Wilson did not testify to any furtive gestures or
movements made by appellant on the trip back to the residence that would have
led him to believe appellant was reaching for a weapon. So, aside from
dispatch's uncorroborated statement that appellant might have a weapon, Deputy
Wilson had no reason to believe that appellant actually possessed a weapon.
Therefore, we conclude that the amount of force utilized by the deputies was not
reasonable. This use of excessive force caused the detention to escalate into an
arrest. Accordingly, we hold that appellant was placed under arrest when the
officers blocked his vehicle in the driveway, ordered him out of the vehicle at
gunpoint, and ordered him to the rear of his vehicle. See Hoag v. State,
728 S.W.2d 375, 379 (Tex. Crim. App. 1987).
Was the Warrantless Arrest
Lawful?
Next, we must determine whether
appellant's warrantless arrest was lawful. The trial court seems to have relied
on the officer's location of the weapon as the basis for probable cause to
arrest appellant for an offense committed in the officer's presence. See
Tex. Code Crim. Proc. Ann. art. 14.01(b) (authorizing warrantless arrest by
peace officer for offense committed in his presence or within his view).
However, given our holding that appellant was arrested before the officer found
the weapon, the location of the weapon obviously cannot serve to support
probable cause for the arrest. Thus, the only basis upon which the officer could
have arrested appellant is on the available facts and circumstances respecting
the alleged commission of an assault.
In Texas, a police officer may only arrest
an individual without a warrant if (a) there is probable cause with respect to
that individual, and (b) the arrest falls within one of the exceptions specified
in the Texas Code of Criminal Procedure. Id. arts. 14.01-.04 (Vernon
1977 & Supp. 2003); Lunde v. State, 736 S.W.2d 665, 666 (Tex. Crim.
App. 1987). For an officer to effect a warrantless arrest for an assault, the
assault must either occur in the officer's presence or view or the officer must
have probable cause to believe that the assault resulted in bodily injury to a
member of the suspect's family or household. Tex. Code Crim. Proc. Ann. arts.
14.01(a), 14.03(a)(4).
Here, based on the 9-1-1 call and Deputy
Wilson's encounter with appellant, Deputy Wilson had probable cause to believe
that appellant had been involved in the domestic disturbance. The alleged
assault, however, did not occur in his presence or view. Further, before
arriving at the residence, Deputy Wilson was informed that the victim had not
suffered bodily injury. Therefore, absent a warrant, the deputies could not
lawfully arrest appellant for assault. Id. art. 14.03(a)(4).
Was the Search of
Appellant's Vehicle Lawful?
The State also contends that the search of
appellant's vehicle was legal because it was based on the deputies' reasonable
suspicion that appellant had a weapon inside the vehicle. Having concluded,
however, that appellant was illegally arrested before the deputies searched his
vehicle, we also hold that the search of appellant's van was unlawful. A search
of a vehicle for weapons is only authorized where the circumstances are such
that a reasonably prudent person would justifiably believe that his safety or
the safety of others is in danger. Michigan v. Long, 463 U.S. 1032,
1050-51, 103 S. Ct. 3469, 3481-82 (1983); O'Hara, 27 S.W.3d at 551; Worthey
v. State, 805 S.W.2d 435, 438 (Tex. Crim. App. 1991). As stated above,
Deputy Wilson had concluded that appellant did not pose a threat to his safety
or the safety of others before he allowed him to drive his own vehicle back to
the residence. Although officers can sometimes rely on police broadcasts to
establish reasonable suspicion, Deputy Wilson had already dispelled his
suspicions regarding a weapon before the police broadcast was aired. See
Dowler v. State, 44 S.W.3d 666, 669-70 (Tex. App.--Austin 2001, pet.
denied) (holding that officers may rely on police broadcast to establish
probable cause if the information known to the officer making the broadcast
request is sufficient to establish probable cause). There is no evidence in the
record to suggest that appellant made any furtive movements or gestures on the
drive back to his residence that would have rekindled Deputy Wilson's suspicion.
In addition, Deputy Wilson had no reason to believe that a weapon had been used
in the disturbance. Therefore, because Wilson did not have a reason to suspect
that appellant had a weapon in his vehicle, the deputies could not legally
perform a search of the vehicle for weapons.
Additionally, because the arrest was not
legal, the search cannot be upheld as a search incident to a lawful arrest.
Therefore, we hold that the trial court abused its discretion by denying
appellant's motion to suppress.
Even though reversal is required on this
ground, constitutional protections against double jeopardy demand that we
continue our analysis because appellant has also complained that the evidence is
legally insufficient to support his conviction. Tex. Code Crim. Proc. Ann. art.
1.11 (Vernon 1977); see also McFarland v. State, 930 S.W.2d 99, 100
(Tex. Crim. App. 1996) (stating that appellate court must always address
sufficiency challenges, "even if the conviction must be reversed on other
grounds").
Sufficiency of the
Evidence
In his first and second points, appellant
contends that the evidence is insufficient to prove that he possessed the
requisite mental state for the offense charged.
In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).
This standard gives full play to the responsibility of the trier of fact to
resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts. Jackson, 443
U.S. at 319, 99 S. Ct. at 2789. When performing a legal sufficiency review, we
may not sit as a thirteenth juror, re-evaluating the weight and credibility of
the evidence and, thus, substituting our judgment for that of the fact finder. Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied,
529 U.S. 1131 (2000).
The charging instrument in this case
alleges that appellant intentionally, knowingly, or recklessly carried a handgun
on or about his person in violation of section 46.02 of the penal code. See
Tex. Penal Code Ann. § 46.02(a) (Vernon 2003). According to the penal code, a
person acts intentionally with respect to the nature of his conduct or to a
result of his conduct when it is his conscious objective or desire to engage in
the conduct or cause the result. Id. § 6.03(a). A person acts
knowingly when the person is aware of the nature of his conduct or that the
circumstances exist or is aware that his conduct is reasonably certain to cause
the result. Id. § 6.03(b). A person acts recklessly when he is aware
of but consciously disregards a substantial and unjustifiable risk that the
circumstances exist or the result will occur. Id. § 6.03(c). Thus, to
find a defendant guilty of the offense of unlawfully carrying a weapon, the
evidence, at a minimum, must establish that the defendant was aware that the
handgun was inside the vehicle. Id. § 6.03.
In the present case, appellant was alone
in the van at the time the weapon was found. The record reveals, however, that
he did not have exclusive control over the vehicle. Both appellant and his wife
had access to the van. Appellant's wife, Laura Stebbins McCraw, testified that
he usually drove the Land Cruiser; not the van. Further, the evidence also
reveals that, on the day of the disturbance, Laura was alone outside of their
residence for a period of time. Appellant testified that he did not know what
she was doing or how long she stayed outside.
Although Laura stated that appellant
always carried a gun in his vehicle, appellant and other witnesses testified
that he only carried a weapon in the vehicle when he went hunting. Only one
person, aside from appellant's wife testified to having seen a weapon inside
appellant's vehicle at a time when appellant was not on a hunting trip.
Appellant's neighbor stated that he had seen a weapon inside the Land Cruiser
while it was parked inside of appellant's garage. The neighbor's testimony,
however, also revealed that his relationship with appellant was strained, and
that appellant had previously filed disorderly conduct charges against him.
Appellant admitted that he had shown the neighbor a weapon, but stated that he
had done so during hunting season.
Laura also testified that appellant owned
many guns and that she did not like guns. Her testimony, however, revealed that
she had a concealed handgun license. When asked, she could not say whether or
not the gun found in the van was the same gun she had used to qualify for her
concealed handgun license. Appellant testified, however, that this gun was the
same gun that she had used. The last time he had seen the weapon was after she
completed the handgun course. At that time, appellant cleaned the weapon and
placed it under the mattress.
Further, the weapon was not located in
plain view. Appellant's wife had to tell the deputies where to locate the gun.
Sergeant Rauch then found the gun hidden in the console of the vehicle under the
cup holder. When confronted with the weapon, appellant told the deputies that he
did not know how the gun got in the van. Although Sergeant Rauch testified that
the look on appellant's face indicated to him that appellant knew the gun was
inside the vehicle, Deputy Wilson stated that appellant seemed surprised when
they located the weapon. At one point, Deputy Wilson even said that he did not
think appellant knew that the gun was in the van. Testimony also revealed that
the weapon seized was a collector's gun, and that it was unlikely that appellant
would have placed this weapon into the console without putting it into a
holster.
Therefore, based on the record in this
case, we hold that the evidence is legally insufficient to show that appellant
was aware that the weapon was inside the vehicle. Accordingly, we reverse the
judgment of the trial court and render a judgment of acquittal.
(1)
 
                                                       
   JOHN CAYCE
                                                       
   CHIEF JUSTICE
 
PANEL A: CAYCE, C.J.; DAY and DAUPHINOT,
JJ.
PUBLISH
DELIVERED: July 3, 2003

1. In light of our holding on this issue, we need not
address appellant's contention that the prosecutor engaged in improper jury
argument. See Tex. R. App. P. 47.1.